# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00343-SCT

*DANNY JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/24/2006 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD A. REHFELDT |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/16/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Danny Jones (Jones) was indicted by the grand jury of Jones County, Second Judicial District, for wilfully and feloniously killing Delores Knight (Knight), without authority of law, with malice aforethought and deliberate design to effect the death of Knight, by shooting her with a shotgun, in violation of Mississippi Code Annotated Section 97-3-19 (Rev. 2006). Jones was tried and convicted by a jury for Knight's murder.

¶2.     The trial court sentenced Jones to serve a term of life in the custody of the Mississippi Department of Corrections, to complete the 18th District Circuit Court's Community Service

Program if released before the full sentence is served, and to pay the court costs of $250.50. Jones filed a post-trial motion for judgment notwithstanding the verdict (J.N.O.V.), or in the alternative, motion for new trial. The trial court denied said post-trial motions. Jones now appeals his conviction and sentence to this Court.

**FACTS**

¶3.     On the evening of January 13, 2001, Knight was shot with buckshot as she walked from an outdoor utility room back into her mother's house located in Soso, Jones County, Mississippi. Knight's mother, Gloria Knight (Gloria), testified that, while Knight was outside carrying the trash to the utility room, she heard "a loud sound like a gunshot." One pellet hit Knight, piercing several vital organs and rupturing both her aorta and inferior vena cava. Once inside the house, Knight walked over to a chair, sat down, breathed three breaths, fell to the floor, and died without uttering a word. Gloria called the sheriff's office. Deputies responded to the call and processed the scene.

¶4.     Gloria testified that Jones had been involved in a relationship with Knight for approximately two years. She stated that Knight had previously lived with Jones, but Knight had moved in with her sometime in October 2000. Gloria testified that Jones lived about three or four miles down the road from her house, but his mother lived about five hundred feet from her house. Gloria described the relationship between her daughter and Jones as "real troublesome."

¶5.     Gloria testified that she was aware that Knight had filed misdemeanor charges against Jones in October 2000. As a result, Knight ended the tumultuous relationship with Jones.

2

She testified that Knight was set to go to court on those charges on January 25, 2001. Gloria testified that the charges involved Jones beating Knight, creating a family disturbance, and cutting the phone line.

¶6. Before Knight was shot and killed, the three misdemeanor charges filed against Jones in the Jones County Justice Court were as follows: (1) sworn to and filed by Scott Sims on October 19, 2000, for leaving visible signs of abuse on Knight's lip, right arm, lower back, by hitting her with a fist, in violation of Mississippi Code Annotated Section 97-3-7(3) (Rev. 2006); (2) sworn to and filed by Knight on October 18, 2000, for causing willful, unlawful, and malicious damage to the phone lines outside the residence by cutting the phone lines in violation of Mississippi Code Annotated Section 97-17-67 (Rev. 2006); and (3) sworn to and filed by Knight on October 18, 2000, on behalf of her minor son age seventeen, Phillip Knight, for willfully and unlawfully disturbing the peace by banging on the door of Phillip's dwelling and blowing a car's horn in violation of Mississippi Code Annotated Section 97-35-11 (Rev. 2006).

¶7. Jones was found guilty on all three misdemeanor charges in justice court and appealed the convictions de novo to county court. By the time Jones went to court on January 25, 2001, on the de novo appeal to the county court, Knight was dead. On appeal, the conviction for domestic violence involving Knight was reversed, but the other two misdemeanors were affirmed. The State contended that the pending charges against Jones provided a motive to murder Knight. The State also argued that Knight's death resulted in the reversal as to the

3

domestic violence conviction received in justice court, since Knight was unavailable to testify at the de novo proceedings on January 25, 2001.

¶8.    Matt Ishee, investigator for the Jones County Sheriff's Office, testified that when he arrived on the scene, Knight was dead, lying on the floor. The lead investigator, Carl Monk, assigned the case to Investigator Ishee. Investigator Ishee was assigned to process the evidence such as the bullet holes in the framing of the doorway and in the eave of the house. Investigator Ishee testified they recovered double-aught buckshot, .32 caliber pellets. He observed eight shots in the house. He testified, that from his experience with buckshot that size, a shell would contain nine buckshot.

¶9.    Investigator Ishee discovered shotgun wadding. He "lined up the wadding from where the entrance was made into the carport area where the buckshot had made entry into the frame of the house in the doorway and basically walked straight backwards across from the road and into this brush area across the ditch."

¶10.    Investigator Ishee discovered three beer cans across the road near some bushes. The beer cans were a yard or two from each other. Two of the beer cans were lying down, one was empty and one was full and unopened. The third beer can was standing up and one-half full. Photographs were taken of the cans, super glue was applied to preserve any prints, and the cans were bagged. From where the beer can was discovered, there was a clear view of Knight's carport.

¶11.    The cans were sent to the crime lab to be analyzed for latent prints. Jamie Bush, forensic section chief in charge of the latent print section for the Mississippi Crime

4

Laboratory, examined the cans for the presence or absence of latent prints. The prints found on the half-full can were compared with Jones's known print exemplars furnished by the Jones County Sheriff's department. The prints matched. The State rested.

¶12. The defense called George Powell, a close friend of Jones, to testify. Powell testified that on the evening of January 13, 2001, Jones was with him in Waynesboro, Mississippi, from approximately 6:30 p.m. until the next day. He testified that they rode around together that evening, drinking. He testified that even though they had several drinks, he could recall what happened that evening. He testified that they had no particular reason to "party" that night. Jones just showed up, and they decided to party.

¶13. On cross-examination by the State, Powell was questioned about whether he remembered the time that Jones showed up at his house. He stated that he remembered because he stopped working on cars at his house at the same time every day, sometimes seven days a week. He testified that the time depended on the work, but he usually stopped around 5:00 p.m.

¶14. Powell further testified on cross-examination that his former girlfriend, Fanny Loper, was living there with him in January 2001, but she was not there when Jones came over because she was out of town. Powell testified before January 13, 2001, it had been a few years since he had last seen Jones. He testified that they went to a club called "In the Corn Field" together that evening, rode around, and drank. When questioned as to who ran the club, Powell testified that they did not go inside the club. He stated: "I did not go inside. We were sitting outside drinking."

¶15. He testified that they sat outside the club from about 8:00 or 9:00 p.m. until 11:00 or 11:30 p.m. They then went back to Powell's place, and Powell talked Jones into spending the night because they had been drinking. Powell could not recall what they talked about that evening. Powell testified that no one saw them together at Powell's house or at the club who could place Jones there.

¶16. O.D. Bruce testified that he had been good friends with Jones for approximately nine years. Bruce testified that he drank "quite a bit" of beer, and that he had consumed beer with Jones on many occasions across the road from Jones's mother's house near the house where Knight lived. He testified that it was common to find cans over there. On cross-examination, Bruce said that he had no knowledge of where the beer cans in this case were discovered. Bruce testified from his experience drinking beer that he could not recall a tossed, half-full beer can landing upright.

¶17. Jones did not testify. The record reflects that Jones was advised that he had a right to testify or not testify and also that Jones informed the trial court that he did not want his attorney to submit a "lesser-included" instruction.

¶18. Sheriff Larry Drake was called as a rebuttal witness. Sheriff Drake, who had been sheriff for approximately twenty-seven years, testified that they patrolled that area where Bruce had said that he and Jones frequently sat around and drank beer. He stated that he had never personally observed anyone sitting out there in that area drinking beer.

## DISCUSSION

6

**I.     Whether the trial court erred in allowing the introduction of the misdemeanor charges affidavits.**

¶19.    Jones filed a pretrial motion in limine to exclude any testimony relating to several incidents involving Jones which were reported to the Jones County Sheriff Department in October and November 2000.  The trial court conducted a hearing outside the presence of the potential jury on whether to admit the evidence of these charges.  The defense argued that the evidence was inadmissible as a prior bad act.  The prosecutor directed the trial court to consider this Court's holding in *Simmons v. State*, 813 So. 2d 710, 716 (Miss. 2002), arguing that, as in *Simmons*, the evidence established motive.  The prosecutor stated in pertinent part:

> This man is arrested.  He's charged with these charges.  These are charges filed by – the domestic violence charge was filed by a deputy sheriff in response to a call that she [Knight] brought him out there.  She filed the other two charges in justice court herself personally.

> Two weeks before this man was set to go to trial on these charges she was murdered.  That is evidence of motive.  It's admissible to prove that he had a motive to kill this woman.  The jury doesn't have to buy that if they don't want to.  But just as in the case as the Court discusses in the *Simmons* case here, they said it can be admissible to prove ***motive, identity, knowledge, preparation***.

(Emphasis added).

¶20.    The trial court ruled:

> All right. I'm required to make a ruling on this, so I'm going to make a ruling that based on what I've have heard that the probative value of this testimony would be admissible, that the prejudicial effect is not so strong as to outweigh the probative value of the testimony.

¶21.    This Court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review.  *Jones v. State*, 904 So. 2d 149, 152 (Miss. 2005).

7

Therefore, the admissibility of evidence rests within the discretion of the trial court, and reversal will be appropriate only when we find that an abuse of discretion resulting in prejudice to the accused occurred. *Clemens v. State*, 732 So. 2d 883, 887 (Miss. 1999). In *Palmer v. State*, 939 So. 2d 792, 795 (Miss. 2006), this Court held:

> [W]henever Miss. R. Enid. 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to a Miss. R. Enid. 403 balancing analysis. *Brown v. State*, 890 So. 2d 901, 912 (Miss. 2004). Rule 403 provides for the exclusion of evidence, even if relevant, where the risk of undue prejudice outweighs its probative value. *Simmons*, 813 So. 2d at 716.

¶22. In *Simmons*, this Court provided an excellent analysis of when evidence of another crime or prior bad act is admissible to prove motive. *Simmons*, 813 So. 2d at 716. The Court held:

> Usually, evidence of another crime or prior bad act is not admissible. *Ballenger v. State*, 667 So. 2d 1242, 1256 (Miss. 1995). However, this Court has held that evidence or proof of a prior crime or bad act is admissible where it is necessary to show identity, knowledge, intent, motive or to prove science. *Wheeler v. State*, 536 So. 2d 1347, 1352 (Miss. 1988); *Carter v. State*, 450 So. 2d 67 (Miss. 1984); *Robinson v. State*, 497 So. 2d 440, 442 (Miss. 1986). *See also* M.R.E. 404(b). Evidence of other crimes or bad acts is also admissible in order to tell the complete story so as not to confuse the jury. *Brown v. State*, 483 So. 2d 328, 330 (Miss. 1986).
>
> In the case at bar, evidence of the prior physical altercation between Wilkerson and Simmons was not offered to show Simmons's character. ***The evidence was presented as an integral part of the story for the purpose of showing intent and establishing motive.***
>
> This Court in *Ballenger* stated:
>
>> Even where evidence of other crimes is admissible under M.R.E. 404(b), it cannot be admitted unless it also passes muster under M.R.E. 403.

8

*Ballenger*, 667 So. 2d at 1257.

Upon admitting the evidence under M.R.E. 404(b), the Court must still consider the admission of the evidence in connection with M.R.E. 403. *Stallworth v. State*, 797 So. 2d 905, 910 (Miss. 2001); *Ballenger*, 667 So. 2d at 1257. M.R.E. 403 provides for the exclusion of evidence, even if it is relevant, where the risk of undue prejudice would outweigh the evidence's probative value. *See* M.R.E. 403.

In the case at hand, the trial court conducted a hearing outside the presence of the jury in order to hear Purvis's testimony regarding the prior altercation between Wilkerson and Simmons. The trial court held that the evidence of the prior physical altercation was probative as to Simmons's state of mind and motive. The trial court further determined that the probative value of the evidence outweighed the prejudicial effect of admitting the evidence.

The prejudicial effect of this testimony did not outweigh its probative value. Therefore, the evidence was properly admitted.

*Simmons*, 813 So. 2d at 716 (emphasis added); *see also Palmer*, 939 So. 2d at 796 (citation omitted) ("In the present case it is clear that the trial court admitted the testimony for the purposes of proving intent, motive and in completing the story of the charged crime. Therefore, it cannot be said that the trial court abused its discretion in admitting the evidence [and denying the motion in limine].").

¶23. The prosecutor argued to the trial court that the evidence was offered to establish motive for Knight's murder. The trial court allowed the evidence as to motive after concluding that the prejudicial effect of the testimony did not outweigh its probative value. We find that the record does not demonstrate that the trial court abused its discretion in admitting the testimony. This issue is without merit.

**II.    Whether the trial court erred in allowing expert testimony as to the position of the gunman and the victim.**

9

¶24. At trial, Dr. Steven Hayne, forensic pathologist, was questioned by the State whether the gunshot wound was a distant gunshot wound or a contact wound and where the shot had originated. The defense argues on appeal that Jones's counsel objected to Dr. Hayne's testimony. However, the record reveals the contrary, and the trial court was never presented an objection on which to rule. The following transpired:

| | |
|---|---|
| State: | And I guess that you have some [wounds] that are contact wounds and some that are distant? |
| Hayne: | Some are near contact. In this case all I was saying is that it's – the distance from the end of the muzzle to the entrance gunshot wound, the back of the decedent was at least two and a half feet or could be considerably greater than that. |
| Defense: | Is it your intention to offer that? |
| State: | Yes. |
| Defense: | ***After having conferred with the defendant, we have no objection to the introduction.*** We will note though, isn't it marked, Ron, not to scale? Is it marked to scale? |
| State: | I will say that this drawing is not to scale for the record. |
| Defense: | With that stipulation – |
| State: | It's a correct drawing but it is not drawn to scale. |
| State: | Doctor Hayne, could you step down here, please, if it's all right with the Court? |
| Court: | Yes, sir. |
| State: | And I'll let you look at this photograph. By the way, since it's no objection, Your Honor, I would offer this drawing into evidence at this time. |
| Court: | Be marked and received into evidence. |
| Defense: | With the stipulation that it's not to scale. |
| State: | Right. It has down on the bottom not to scale. |
| Court: | Be marked and received. |
| State: | You see something up at the top here, Doctor Hayne, it says front of residence. And then you have an arrow saying carport, and then you have another arrow pointing to a laundry room. As you look down towards the bottom of this picture you see an area across a road which is designated as Highway 533. And then down at the bottom you have an area pointing over here. It says, area where beer cans were found. Now, looking over |

10

here I ask you to look where these arrows are where it says, area where the beer cans are found, and the laundry room here in the back of the garage. And if you look from where these beer cans were found up here to the laundry room, could you tell me, in your expert opinion, whether or not the gunshot wound to Deloris Knight would be consistent with someone shooting from the area of the beer cans and hitting her while she is in the garage?

Defense: May it please the Court, I'm not sure that his area of expertise goes to that. We did stipulate as an expert. I'm not going to object to it. ***I'm going to go ahead and let him answer.***

Court: All right. You may answer.

Hayne: If the decedent were facing in this direction towards the carport, the angle would be approximately 20 degrees coming up and it would be consistent with having [been] struck by a buckshot fired in this area coming up at 20 degrees facing towards the carport.

(Emphasis added).

¶25. Based on the record, the defense did not object to Dr. Hayne's testimony, stating "let him answer." Therefore, the trial court did not have a contemporaneous objection by Jones to consider. "'[I]f no contemporaneous objection is made, the error, if any, is waived.'" ***Walker v. State***, 671 So. 2d 581, 597 (Miss. 1995) (quoting ***Foster v. State***, 639 So. 2d 1263, 1270 (Miss. 1994)); *see also* ***Rubenstein v. State***, 941 So. 2d 735, 751 (Miss. 2006). "Failure to make a contemporaneous objection waives an issue for purposes of appeal." ***Spicer v. State***, 921 So. 2d 292, 305 (Miss. 2006) (citing ***Williams v. State***, 684 So. 2d 1179, 1203 (Miss. 1996)).

¶26. Accordingly, Jones's failure to object at trial waived this claim of error on appeal.

**III.    Whether the trial court should have removed the district attorney.**

11

¶27. In a pretrial motion, Jones's counsel informed the trial court that his client asked him to argue that since the current district attorney, Anthony Buckley, was previously a public defender at the time Jones was appointed a public defender, Buckley should be removed from the case. Jones's counsel said that the order appointing Jones a public defender in justice court did not specify Buckley as Jones's attorney. Further, Jones's counsel informed the trial court that, "it is my understanding on information and belief that Mr. Buckley had no conversation whatsoever with my client."

¶28. Buckley stated to the trial court:

> There are four independent public defenders, all part-time. Although it's called office of the public defender, it's not like a true office where one recusal recuses all the other three. And since I'm not on this document, there was three others, and I'm not specifically named, and because I never met with Mr. Jones, I never counseled with him, I never offered advice, I never received information from law enforcement of any kind in regards to this case, then under the conflict statute I would have no conflict. I have received no information from this case that I can use for the State's advantage today.

> This is merely a procedure where often at justice court we just automatically appoint a public defender for initial appearance. And as you know, Mr. Jones hired himself a private attorney. Not Mr. McKenzie at the time, I believe a Ms. Perkins, and never met with any public defender, Your Honor. . . .

¶29. The trial court inquired as to whether the public defender, in fact, did not normally have any contact with defendants in justice court. Buckley said that the public defenders had no contact with defendants until appointed by the circuit court as the defendants were called up for arraignment. The trial court found no conflict because there was no contact. The trial

12

court further found that Jones never did or said anything to the public defender or any public defender that would rise to the level of any prejudice against him.

¶30. Correctly applying holdings of this Court, the Court of Appeals recently addressed this issue, stating:

> It is well settled that "a prosecuting attorney is disqualified from acting in a criminal case if he has previously represented or been consulted professionally by the accused with respect to the offense charged." ***Gray v. State***, 469 So. 2d 1252, 1254 (Miss. 1985). "The subsequent prosecution of a criminal defendant by an attorney who has previously gained confidential information from the accused relative to the charges against him is inherently incompatible with the right of a criminal defendant to receive a fair trial." ***Id.*** *However, no purpose would be served by applying the proscriptive rule to bar a prosecuting attorney's participation in a criminal case where the evidence fails to establish that the attorney, by reason of his professional relations with the accused, gained any confidential information regarding the matter involved in the criminal prosecution.* Each case must therefore be examined on its facts in order to determine the nature of the attorney's prior relationship with the accused and the *substance of any communications between the attorney and the accused*. *Id*. at 1255 (citing ***Dunn v. State***, 264 So. 2d 823 (Miss. 1972); ***Russell v. State***, 185 Miss. 464, 189 So. 90 (1939)).
>
> The question to be determined, then, is whether the trial court was clearly erroneous in its finding that *no confidential information was transmitted* . . .

***Vandergriff v. State***, 920 So. 2d 486, 492-493 (Miss. Ct. App. 2006) (emphasis added).

¶31. We find that the trial court did not err in finding that no conflict existed to merit the removal of the district attorney, Buckley, from this case. This assignment of error is without merit.

**IV.     Whether the jury was properly instructed on circumstantial evidence.**

13

¶32.   Jones argues on appeal that he was denied a circumstantial evidence instruction in his case. The record contradicts that assertion. Jones's counsel offered and was granted jury instruction D-1, which provided:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis. This presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt and to the **exclusion of every reasonable hypothesis**. The Defendant is not required to prove his innocence.

(Emphasis added).

¶33.   "In determining whether error exists in granting or refusing jury instructions, the instructions must be read as a whole; if the instructions fairly announce the law and create no injustice, no reversible error will be found." **Martin v. State**, 854 So. 2d 1004, 1009 (Miss. 2003).

¶34.   In **Wilson v. State**, 936 So. 2d 357, 365 (Miss. 2006), this Court held:

> [T]wo - theory instructions should only be given in cases based entirely on circumstantial evidence. **State v. Rogers**, 847 So. 2d 858, 863 (Miss. 2003). We have defined circumstantial evidence as that which, without going directly to prove the existence of a fact, gives rise to a logical inference that such a fact exists. **Id**. A circumstantial evidence case is one in which there is neither eyewitness testimony nor a confession to the crime. **Id**.

¶35.   "With respect to jury instructions involving the issue of circumstantial evidence, '[where] all the evidence tending to prove the guilt of the defendant is circumstantial, the trial court must grant a jury instruction that *every reasonable hypothesis other than that of guilt*

14

*must be excluded in order to convict.*'" ***Rubenstein***, 941 So. 2d at 785 (quoting ***Givens v. State***, 618 So. 2d 1313, 1318 (Miss. 1993)) (emphasis added).

¶36. The jury was instructed that Jones was presumed innocent, and every reasonable hypothesis other than that of guilt must be excluded in order to find Jones guilty. There is no error "if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law. . . ." ***Scott v. State***, 878 So. 2d 933, 966 (Miss. 2004) (citing ***Milano v. State***, 790 So. 2d 179, 184 (Miss. 2001)); *see also* ***Rubenstein***, 941 So. 2d at 785.

¶37. Since Jones was given a circumstantial evidence instruction, we find that this assignment of error is without merit.

### V. Whether Jones's counsel was ineffective.

¶38. On appeal, Jones's appellate counsel raised two assignments of error, that trial counsel was ineffective: (1) for not requesting a circumstantial jury instruction, and (2) for not requesting a limiting instruction on the prior bad acts.

¶39. As discussed in Issue IV, the jury was instructed that Jones was presumed innocent and every reasonable hypothesis other than that of guilt must be excluded in order to find Jones guilty. As this Court found no error in Issue IV, trial counsel was not ineffective. This assignment of error is without merit.

¶40. Jones also argues on appeal that trial counsel should have requested a limiting instruction as to Jones's prior bad acts. The alleged prior bad acts were discussed in Issue I in the context of the motion in limine. This Court has acknowledged that in many

15

instances, defense counsel may elect to request or not request a limiting instruction. ***Brown***

***v. State***, 890 So. 2d 901, 913 (Miss. 2004). In ***Brown***, the Court held:

> ***In many instances a limiting instruction from the bench can actually focus a jury's attention on the sensitive testimony***. Because a defendant ***might be prejudiced by such an instruction***, we allowed trial counsel to actually object to the sua sponte instruction. *See* ***Robinson v. State***, 735 So. 2d 208, 210 (Miss. 1999). However, it is ***not per se prejudicial to a defendant*** if a jury simply hears an isolated instance of a crime or bad act in the course of a trial.
>
> The burden should properly be upon the trial counsel to request a limiting instruction.

***Brown***, 890 So. 2d at 913. (Emphasis added).

¶41. This Court has stated the standard for review on ineffective assistance of counsel, following the standard provided in ***Strickland v. Washington***, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and ***Stringer v. State***, 454 So. 2d 468 (Miss. 1984). ***Puckett v. State***, 879 So. 2d 920, 935-936 (Miss. 2004). The Court held:

> "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ***Strickland v. Washington***, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case. ***Id***. at 687, 466 U.S. 668, 104 S. Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." ***Stringer v. State***, 454 So. 2d 468, 477 (Miss. 1984) (citing ***Strickland v. Washington***, 466 U.S. at 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. ***Id***.
>
> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) . . . A fair assessment of attorney performance requires that

every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Stringer*, 454 So. 2d at 477 (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052). Defense counsel is presumed competent. *Id*.

Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id*. The question here is:

> [W]hether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068.

> There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988); *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So. 2d 1279, 1281 (Miss. 1987); *Mohr v. State*, 584 So. 2d 426 (Miss. 1991).

*Davis v. State*, 743 So. 2d 326, 333-34 (Miss. 1999) (citing *Foster v. State*, 687 So. 2d 1124, 1130 (Miss. 1996)). *Brown v. State*, 798 So. 2d 481, 493-94 (Miss. 2001).

*Puckett*, 879 So. 2d at 935-36.

¶42. "When claiming ineffective assistance of trial counsel because of jury instructions, 'it is the duty of the appellant to demonstrate both error in failing to receive the instruction and the prejudice to the defense.'" *Havard v. State*, 928 So. 2d 771, 789 (Miss. 2006) (quoting *Burnside v. State*, 882 So. 2d 212, 216 (Miss. 2004)). The Court went on to state that trial "counsel is given broad discretion to plan a trial strategy and to carry it out." *Havard*, 928 So. 2d at 790. The Court further held:

> "When evaluating the overall performance of counsel, counsel must make strategic discretionary decisions including whether or not to file certain motions, call certain witnesses, ask certain questions or make certain objections." *Branch*, 882 So. 2d at 52 (citation omitted). Such decisions do not necessarily equate to ineffective assistance simply because counsel was not successful at trial. These trial decisions by counsel did not decidedly result in performance deficient under *Strickland*, but even if they did, the inquiry does not end there. "Once a deficient performance is shown, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Woodward*, 635 So. 2d at 808 (quoting *Strickland*, 466 U.S. at 694).

*Havard*, 928 So. 2d at 790.

¶43. Here, the defense filed a motion in limine to exclude the alleged prior bad acts from the jury. However, the defense did not seek an instruction stating that the testimony regarding the charges in justice court was to be considered by the jury solely to establish Jones's motive for murdering Knight. Arguably, trial counsel chose not to place this sensitive evidence, which was allowed by the trial court to establish motive for the murder, before the jury in an instruction to be focused on in the jury deliberations. While the defense could have sought an instruction and would have been entitled to one if sought, the case law

18

examined above is clear that the decision rests with counsel, and trial counsel is provided broad discretion in decisions related to trial strategy.

¶44.    We find that this assignment of error does not merit reversal.

### VI.    Whether the State's closing argument was improper.

¶45.     This Court reviews the propriety of closing arguments giving deference to the trial court's ruling, because the trial court is in the best position to determine if an alleged improper comment had a prejudicial effect; therefore, absent an abuse of that discretion, the trial court's ruling will stand. *Stevens v. State*, 806 So. 2d 1031, 1057 (Miss. 2001) (citing *Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990)). "[A]ttorneys are allowed wide latitude in their arguments 'limiting them not only to facts, but also to deductions and conclusions which may be drawn therefrom, and to the application of the law to those facts.'" *Stevens*, 806 So. 2d at 1057 (quoting *Holly v. State*, 716 So. 2d 979, 988 (Miss. 1998)).

¶46.    On appeal, this Court must consider "whether the natural and probable effect of the improper argument of the prosecuting attorney [created] an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Wells v. State*, 698 So. 2d 497, 507 (Miss. 1997); *see also Caston v. State*, 823 So. 2d 473, 495 (Miss. 2002) ("The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.") (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2000)).

19

¶47. In *Wells*, this Court addressed the "golden rule." *Id.* at 506. "A golden rule argument asks the jurors to put themselves in the place of one of the parties." *Stevens*, 806 So. 2d at 1057. The Court, in *Wells*, 698 So. 2d at 507, did not find that any prejudice resulted to the defendant, stating:

> In light of the overwhelming evidence against Wells, *the jury's verdict likely was not influenced by any prejudice that might have resulted from the district attorney's isolated "golden rule" argument*.

(Emphasis added).

¶48. Jones takes issue with remarks made by the prosecutor in the closing argument, the first in the beginning of the close:

> You know, you have to use your common sense. If you leave that at home, you can let every slim killer in Jones County walk out of the courtroom. Who will speak for Dolores [Delores] Knight?

The trial court did not issue a ruling as to the defense's objection. Instead, seeking a ruling from the trial court during the argument, the defense asked the trial court to take up the objection outside the presence of the jury. The prosecutor made the following comment in the State's final closing argument:

> I don't know – my grandfather didn't live over a jail. He was a farmer out at Calhoun. I don't know about all of that mess. I'm just a red-neck out of the west side of the county, and happened to be a lawyer. That is all I know. I just try to use my common sense. Okay? You know if you take the Hattiesburg judges or the Hattiesburg whatever, the only thing I have a problem with, I never did this when I represented people who was accused of all kinds of minor, heinous stuff. I never had the nerve to come up here and tell somebody that I was proud to represent them and I knew they were [not] guilty, and it was my privilege to do it. You know, he is representing him just like every other lawyer does, because he's paid him to do it.

20

The defense objected, and the trial court reprimanded the prosecutor "to go by the facts of the case, and take your personal opinions out of it . . . or I'm going to declare a mistrial . . . the next time that comes out." The defense also reserved the right to object outside the jury's presence. Once the closing argument concluded, the trial court again strongly reprimanded the prosecutor for his comment, but denied the request for a mistrial.

¶49. In his assignment of error, Jones fails to mention that the prosecutor's remarks in the final closing were made in response to the defense's statements in its closing argument. In the defense's closing argument, Jones's counsel argued:

> Mr. Parrish [prosecutor] tried his best. Let me say right now, I failed to mentioned (sic) this thought. I am thankful for the civil manner in which Mr. Parrish has conducted this trial because a lot of times, that doesn't happen. A lot of times the prosecutor is so vigorous and is so demeaning to the opposite side, they just want to get in there and they want to badger the Defendant and they want to badger the lawyer. That did not happen, and I want to thank J. Ronald for that. . . .

> I want you to remember all those things. I want you to remember that the alibi testimony is un-refuted. ***You know, our place in this life, a lot of times, has to do with our heritage.*** And I told you in addressing you that ***I supported law enforcement*** and Mr. Parrish objected to that. I told [you] that at a later time I would tell you why.

> Well, the reason why is that ***I have had family members in law enforcement.*** My grandfather was a deputy sheriff and constable. And in fact, we used to kid my daddy because he was in jail at one point in time, because they literally lived over the jail. But, my other grandfather, like Danny Jones [defendant], was a God-fearing master carpenter. He could build just about anything. But had a a (sic) great hobby and it was a hobby of playing Dominoes. And because he was a master carpenter, he made me a set of Dominoes that I was stupid enough to let get lost throughout the years. . . .

21

*I had said when I went back into the practice of law, that I would never represent anyone who had done something to* – . . .

[State objected to the personal opinions offered by the defense. The trial court overruled the objection]

*I obviously would not have done so in this case. If I thought that Danny Jones murdered anyone, I wouldn't be here today. . . .*

[State objected. The trial court overruled the objection.]

*I am here to tell you that it did not happen.*

(Emphasis added).

¶50. The prosecutor's remarks were invective and out-of-line. However, the defense's statements invited the prosecutor's response. The defense's statements were an attack on the prosecutor, personally, in front of the jury. The defense's statements also asked the jury to put themselves in the defense attorney's place, to share a common heritage with the witnesses, and to accept that he would never as an attorney represent a guilty person. Both the prosecutor and the defense crossed the line in the closing arguments. Clearly, the attorneys resorted to improper behavior.

¶51. But under the limited situation of this case, the prosecutor's remarks were sufficiently insignificant in the overall context of the case before us that any error was harmless. Further, the jury heard the trial court admonish and reprimand the prosecutor for his comment and threaten to declare a mistrial if the prosecutor continued to make such remarks. In considering whether a mistrial was warranted, this Court defers to the trial court's determination of whether the defendant suffered any prejudicial effect. ***Sipp v.***

22

***State***, 936 So. 2d 326, 331 (Miss. 2006) ("The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case; however, the trial judge is permitted considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect."); ***Gossett v. State***, 660 So. 2d 1285, 1290-91 (Miss. 1995); ***Roundtree v. State***, 568 So. 2d 1173, 1178 (Miss. 1990)).

¶52.    In ***Monk v. State***, 532 So. 2d 592, 601 (Miss. 1988), this Court stated:

> The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel's argument is within the limits of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective, and illustration therein.  Moreover, figurative speech is legitimate if there is evidence on which it may be founded.  ***Exaggerated statements and hasty observations are often made in the heat of debate, which, although not legitimate, are generally disregarded by the court, because in its opinion they are harmless.***

(Emphasis added).

¶53.    While error occurred, we find that the error was harmless, as it resulted in no prejudice to Jones, and it does not merit reversal.

###    VII.    Whether the verdict was contrary to the weight of the evidence.

¶54.    A motion for new trial challenges the weight of the evidence.  ***Sheffield v. State***, 749 So. 2d 123, 127 (Miss. 1999).  A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial.  ***Id***.  In ***Bush v. State***, 895 So. 2d 836, 844 (Miss. 2005), this Court set out the standard of review for weight of the evidence as follows:

23

When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000). However, the evidence should be weighed in the light most favorable to the verdict. *Herring*, 691 So. 2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." *McQueen v. State*, 423 So. 2d 800, 803 (Miss. 1982). Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. *Id*. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. *Id*. Instead, the proper remedy is to grant a new trial.

¶55. Without re-discussing the testimony already related within this opinion, the jury heard the testimony from all the State's witnesses, including the defense's cross-examination of those witnesses, and from the defense's witnesses, including the State's cross-examination of those witnesses. Here, no new trial is warranted, as the jury's verdict is consistent with the weight of the evidence. We find that the evidence, weighed in the light most favorable to the verdict, supports the jury's resolution of the conflicting testimony.

¶56. Accordingly, we find that the trial court did not err in denying Jones's motion for a new trial. This assignment of error is without merit.

**CONCLUSION**

24

¶57. For the foregoing reasons, the judgment of the Circuit Court of the Second Judicial District of Jones County, Mississippi, is affirmed.

¶58. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶59. The only evidence tying Danny Jones to the death of Deloris Knight was fingerprints on a beer can found across the street from her house. Because the evidence in this case is so wholly insufficient to support a murder conviction, I must respectfully dissent.

¶60. Although the majority only briefly addresses the weight of the evidence, Jones also argues on appeal that the evidence was legally insufficient to support a conviction. Jones moved for a directed verdict at the close of the state's case-in-chief and also moved post-trial for a judgment notwithstanding the verdict. Both motions challenge the sufficiency of the evidence, and this is not the first time a defendant has erroneously combined the weight and sufficiency arguments on appeal. *See **Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005); ***Foster v. State***, 919 So. 2d 12, 15 (Miss. 2005).

¶61. In determining whether the evidence is sufficient to sustain a conviction, we look at the evidence in the light most favorable to the state. ***Bush***, 895 So. 2d at 843. Our

25

inquiry focuses on whether this evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Id.* (quoting *Carr v. State*, 208 So. 2d 889, 889 (Miss. 1968)). If the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the appropriate remedy is to reverse and render. *Id.* (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶62. At best, the state proved that Jones may have consumed beer in the same place from which the shooter killed Knight. The state offered no proof that Jones was sitting in that spot when Knight was killed. The state never introduced a murder weapon, and there was no evidence that Jones owned or had access to the type of gun used to kill Knight.

¶63. I also question the dubious expert testimony offered to prove that the shots were fired from the area where the beer cans were found. The investigating officer was prohibited from testifying that someone could shoot from the location of the cans into the garage. However, Dr. Hayne testified that in his expert opinion, he could tell the bullet was coming from a 20 degree angle where the cans were found. First, Dr. Hayne is at best a forensic pathologist, not an expert in ballistics. The state made no effort to qualify him as an expert in ballistics. Second, even if he were a ballistics expert, his testimony is based on the direction the victim was facing. As no one witnessed the shooting, and Knight died after walking inside the house, there is no evidence of the position of her

26

body when she was shot. Accordingly, the state failed to establish a foundation for this testimony, and it should be excluded as improper and irrelevant.[1]

¶64. Finally, it is impossible to ignore the extreme delay between Jones's arraignment and his trial. Jones was arraigned on September 20, 2001, but was not tried until January 23, 2006. Jones filed a motion to dismiss based on his right to a speedy trial on September 26, 2002, three-hundred and seventy-one days after his arraignment. No trial date had been set in more than one hundred days past the statutory deadline. Miss. Code Ann. § 99-17-1 (Rev. 2000) ("Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."). It is impossible to reconcile this discrepancy with our constitutional and statutory provisions regarding speedy trials. *See Guice v. State*, 952 So.2d 129, 143-51 (Miss. 2007) (Diaz, J., dissenting).

¶65. In conclusion, it cannot be said that the state presented sufficient evidence to support a murder conviction, and I would reverse.

---

[1]This is not the first time Dr. Hayne has offered questionable testimony outside his area of expertise. Recently, in *Edmonds v. State*, 955 So. 2d 787, 792-93 (Miss. 2007), this Court reversed a conviction in part because Dr. Hayne was allowed to testify that he could tell two people were holding the gun used to kill the victim. Interestingly, in *Edmonds*, Dr. Hayne testified that in his twenty-five-year career, he had performed 25,000 to 30,000 autopsies. *Id.* at 802 (Diaz, P.J., specially concurring). In the the present trial, which was conducted only a year and a half after *Edmonds*, Dr. Hayne testified that he had been practicing for thirty-five years and had performed 35,000 autopsies.