# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01066-COA

**TROY GALARZA**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2022 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/14/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     In 2022, Troy Galarza was convicted of first-degree murder and possessing a firearm as a felon.  He was sentenced as a habitual offender to serve life imprisonment without eligibility for parole for the first-degree murder conviction (Count I) and to serve ten years for the felon-in-possession conviction (Count II), with the terms set to be served consecutively.  Galarza now appeals alleging that the circuit court abused its discretion by allowing character evidence of his prior convictions for manslaughter to support its case against him.  Upon review, we find that the court did not abuse its discretion when it allowed the evidence.  Moreover, even if we were to find an abuse of discretion, the error was

harmless due to the overwhelming evidence of Galarza's guilt. We therefore affirm.

## FACTUAL BACKGROUND

¶2. On November 14, 2018, the Lincoln County Sheriff's Department conducted a welfare check for Wesley Watts at Triple G Goat Farm, the home of Troy Galarza. Watts's mother had requested the welfare check and informed the officers that the last place she knew Watts had been was Galarza's property. Galarza spoke with officers that day, stating that Watts had been on his property "earlier that month kind of staying in and out with him." Officers noted seeing "several buzzards in the area" and a gun in the back of Galarza's car. The welfare check was recorded via body-camera footage.

¶3. On December 1, 2018, Watts's debit card and hotel room key were found separately on the side of the interstate "south of the Bogue Chitto exit." Around December 3, 2018, Galarza's friend Jimmy Buitt contacted authorities to give them information regarding Watts's disappearance. Buitt stated that approximately one month earlier, Galarza had told him "[t]hat he killed Wesley Watts for stealing from him" and "rolled him up in a rug and put him in the field."

¶4. On December 4, 2018, authorities executed a search warrant on Galarza's property and recovered "about 12 [weapons]" including "[r]ifles and pistols . . . [a]nd knives . . . [and] several casings, bullet casings, numerous types of caliber [and] some rope[.]" Additionally, "about 200 yards northeast of the residence[,]" authorities discovered a body "wrapped up in a rug" with "nothing sticking out but [the] feet" and "rope around the legs, ankle area." The body was identified as Wesley Watts. His death was determined to be a homicide caused

2

by "a gunshot wound of the torso[.]" Authorities interviewed multiple people regarding the murder, including Galarza. On December 5, 2018, Galarza gave a recorded video statement to the police. The statement was "about two hours" long. Notably, Galarza confessed to owning multiple guns, including a "Winchester 30-30" that was found at his friend Craig Burns's home, but maintained that he did not kill Watts. Specifically, Galarza asserted that "if I had shot him and left him above ground for two weeks, I guess I would be stupid," and "I would not have left a f****** body on the ground laying on the ground . . . if I would've shot the mother f*****, I would have taken him out of there that day or night or whatever it was."

¶5.    On June 29, 2021, a Lincoln County grand jury indicted Galarza for first-degree murder and possession of a weapon by a felon. In an omnibus order signed on October 6, 2021, the State signaled its intent to "rely on prior acts or convictions of a similar nature for proof of knowledge or intent." On December 29, 2021, the indictment was amended to clarify that Galarza would be prosecuted as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2020). This motion to amend specified the crimes used to regard Galarza as a habitual offender: simple robbery, battery, and aggravated battery convictions from Louisiana in 1989, as well as two manslaughter convictions from Mississippi in 2006.

¶6.    On September 28, 2022, Galarza filed eight separate motions in limine with the circuit court. The motions sought to exclude evidence of his prior convictions, evidence of his "association with various groups, i.e., Aryan Nation, Aryan Brotherhood and others[,]" phone

3

calls referencing his imprisonment, body-camera footage of an investigating officer, and prejudicial testimony from his sister. The court held a motions hearing the following day, where the parties agreed upon certain stipulations to settle a number of the motions. The court denied the two motions Galarza had filed regarding the two manslaughter convictions and the witnesses who would testify about them. The court granted the motion to exclude testimony about Galarza's group affiliations.

¶7. Galarza's trial took place from October 4, 2022, to October 7, 2022. The State called eighteen witnesses, including people who knew Galarza personally and were present on the alleged night of Watts's murder. One such witness, Brandi Thompson, was acquainted with both men and testified to seeing the rug wrapped around Watts's body in Galarza's living room. Thompson also stated that Watts was present the last time she went to Galarza's home. "[R]ight before . . . daylight[,]" Watts left, and Galarza walked him out. When Galarza came back inside, he told Thompson "he f***** [Watts] up and that [Watts] wouldn't steal from him again." He also asked Thompson to drive him to a few different locations. Notably, Thompson testified Galarza instructed her to skip their exit because "he had to look at something on the next exit." Thompson said she did so and saw Galarza "out of [her] peripheral" making "like motions toward the window." She also "felt like a chain or something had hit the window." Shortly after, he told her "to get back on the interstate." Galarza did not stop to look at anything. Further testimony from other witnesses established that this area of the roadway was where Watts's personal identification cards were later found.

4

¶8.    Buitt explained to the jury that Galarza confessed "he killed Wesley Watts for stealing from him" and "rolled him up in a rug and put him in the field." Investigator Barry Huff, who interviewed Buitt at the station, testified as well. He stated that in Buitt's interview, he "advised that he was with [Galarza] one day and [Galarza] told him that he had shot [Watts] in the back and rolled him up in a rug, tied him up by his feet, and there would be nothing sticking out but his feet." Huff verified the information was correct when he went to search for the body at Galarza's home as part of the search warrant.

¶9.    Forensic specialists involved with the case shared their findings with the jury, such as Jacob Burchfield. He tested wool fibers found in a vacuum brush roller from Galarza's home and a piece of the rug that was wrapped around Watts's body, finding that the two samples' fibers "were consistent on the basis of microscopic appearances[.]" Bullet fragments from Watts's body were shot from one of Galarza's rifles: the Winchester 30-30. The recording of Galarza's full statement to the police was played for the jury, along with a phone call he made to his then-romantic interest.

¶10.    The State also called Dave Stepro, who testified that he and his wife were interested in purchasing "5475 Lower Bay Road in the unincorporated area of Hancock County" in 2004. They "went out there" and "were met by [Galarza,]" who stated that he owned the land and that it was not for sale. On the following day, however, Galarza's "attitude had changed and . . . he was more cooperative and friendly[.]" Stepro walked the property, which "had a lot of trash on it," and "noticed a spot of disturbed earth" but assumed someone had simply "buried garbage there." The Stepros purchased the property and began clearing it.

On March 21, 2004, they noticed what appeared to be "the top portion of an elbow" sticking out of the ground. Authorities exhumed "[t]wo bodies from that spot." The deaths "were not by natural causes." Stepro testified that Galarza was subsequently convicted on two counts of manslaughter. Documentation of the charges and convictions was not offered into evidence until the sentencing portion of Galarza's trial.

¶11. The jury convicted Galarza of first-degree murder and possession of a weapon by a felon. He was sentenced to life imprisonment without eligibility for parole for the murder and ten years to be served consecutively for the possession. The court also ordered Galarza to pay a $15,000 fine. On October 11, 2022, Galarza filed a motion for a new trial alleging, among other things, that the use of his manslaughter convictions from 2006 involved improper character evidence and was erroneous. That motion was denied the following day. On October 12, 2022, Galarza appealed alleging one issue—that the circuit court erred in allowing evidence of his prior convictions to be admitted.

## STANDARD OF REVIEW

¶12. We review "the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review." *Smith v. State*, 986 So. 2d 290, 295 (¶12) (Miss. 2008) (citing *Jones v. State*, 962 So. 2d 1263, 1268 (¶21) (Miss. 2007)). "Abuse of discretion is an appellate court's most deferential standard of review." *Owens v. State*, No. 2021-CT-00887-SCT, 2024 WL 1336581, at *3 (¶19) (Miss. Mar. 28, 2024). "In carrying out our review, we weigh the evidence in the light most favorable to the verdict, only disturbing a verdict when it is so contrary to the overwhelming weight of the evidence that

6

to allow it to stand would sanction an unconscionable injustice." *Id.* (quoting *Lindsey v. State*, 212 So. 3d 44, 45 (¶4) (Miss. 2017)).

¶13. "As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference." *Lomas v. State*, 328 So. 3d 670, 688 (¶49) (Miss. Ct. App. 2021) (quoting *Magee v. State*, 300 So. 3d 1088, 1090 (¶9) (Miss. Ct. App. 2020)). "Reversal is appropriate only when the circuit court's abuse of discretion results in prejudice to the accused." *Id.* (quoting *Williams v. State*, 308 So. 3d 892, 894-95 (¶8) (Miss. Ct. App. 2020)). "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." *Owens*, 2024 WL 1336581, at *3 (¶19) (quoting *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983)).

## DISCUSSION

¶14. Rule 404(b) of the Mississippi Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." MRE 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2). "Under Rule 404(b), if the evidence meets the requirements of that rule for admission for some permissible purpose, then the trial court must still weigh the evidence under Rule 403, which allows exclusion of relevant evidence where the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue,

or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Robinson v. State*, 42 So. 3d 598, 604 (¶22) (Miss. Ct. App. 2010).

¶15. The State contends that Galarza's previous manslaughter convictions were admissible to prove "motive, intent, or common scheme or plan[.]" Further, the manslaughter convictions were introduced to show Galarza had established a "plan" or "common scheme" of disposing of bodies on his own property.

¶16. In the order denying Galarza's motions in limine regarding the prior convictions, the trial court found "the prior convictions and investigation of these crimes are admissible under Rule 404(b) to prove motive, intent or common scheme or plan." Additionally, the trial court considered Rule 403 of the Mississippi Rules of Evidence and held "that the probative value of such evidence [wa]s not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The trial court gave the jury a limiting instruction to ensure the evidence was not considered as evidence of guilt. That limiting instruction read as follows:

> The Court instructs the Jury that the testimony, regarding the prior criminal activity of the defendant, was offered in an effort to prove preparation, plan, or knowledge, on the part of the defendant. You may give this testimony such weight and credibility as you deem proper under the circumstances. **However, you cannot and must not consider this testimony in any way regarding whether or not this defendant is guilty or not guilty of the charges for which he is presently on trial.**

(Emphasis added). We "presume[] that jurors follow the instructions of the court. To presume otherwise would be to render the jury system inoperable." *Neal v. State*, 15 So. 3d

8

388, 402 (¶30) (Miss. 2009) (quoting *Moore v. State*, 787 So. 2d 1282, 1291 (¶30) (Miss. 2001)).

¶17.    In so doing, the trial court's decision was within the ambit of the Mississippi Rules of Evidence.    While other cases have found similar evidence of prior convictions inadmissible, the supreme court has clearly articulated that this Court is to afford deference to the trial court and affirm if the trial court's use of "discretion" has not led to a verdict "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Owens*, 2024 WL 1336581, at *3 (¶19) (quoting *Lindsey*, 212 So. 3d at 45 (¶4)).

¶18.    The supreme court reviewed the same issue in *Johnson v. State*, 204 So. 3d 763 (Miss. 2016). Johnson was convicted of aggravated domestic violence against his ex-wife following a trial in which evidence of his prior domestic violence against women had been admitted into evidence. *Id.* at 761, 770 (¶¶1, 17).  He argued to this Court, among other things, that evidence of his prior acts of domestic violence should have been excluded as improper character evidence and that the trial court did not conduct a Rule 403 balancing test in admitting the reports. *Id.* at 766 (¶5).  After the Court of Appeals reversed the conviction, the supreme court granted certiorari review. *Id.* at (¶6).  The supreme court noted that the trial court had allowed evidence of the prior assaults by Johnson because they "were against women, where he was the aggressor and he had initiated the contact." *Id.* at 769 (¶17). As such, the court agreed with the trial court's original decision that the domestic violence acts were relevant "to prove intent, motive, [and] plan[.]" *Id*.  In addressing the Rule 403 issue,

9

the court found that the trial court had correctly performed a balancing test in which it concluded that the "four prior offenses were very serious and akin to what happened in this case and therefore probative for the jury as it decide[d] the facts of the case." *Id.* at (¶¶18-19).

¶19.     The supreme court also addressed the discretionary standard afforded to trial court judges in situations such as this in *Stone v. State*, 94 So. 3d 1078, 1085 (¶20) (Miss. 2012). The defendant was charged with aggravated assault against his sister and evidence of prior "history of threats and violence directed toward his sister" was entered into evidence. *Id.* at 1084 (¶18).  On appeal, Stone argued that the admission of such evidence was reversible error. *Id.*  The supreme court recognized that "[a]ll relevant evidence is generally admissible, absent an exception." *Id.* (quoting MRE 402).  That definition is "extremely broad, so that evidence is relevant and should be admitted if the evidence has any probative value at all." *Id.* (quoting *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 947 (¶15) (Miss. 2008)).  The evidence "*may* be excluded" if said probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]"  MRE 403 (emphasis added).

¶20.     In its determination, the court noted that "[t]he question on review is **not** whether this Court would have admitted the evidence, but whether the trial court **abused its discretion in doing so**, for the exclusion of prejudicial evidence is permissive; that is, if a trial court determines that the prejudicial effect of evidence substantially outweighs its probative value, it is not obligated to exclude the evidence, but may do so at its discretion." *Stone*, 94 So. 3d

10

at 1085 (¶20) (emphasis added) (quoting *Ross v. State*, 954 So. 2d 968, 993 (¶44) (Miss. 2007)). The Rule 403 balancing test requires "that a [trial] judge rely on his/her own sound judgment." *Id.* (quoting *Jones v. State*, 920 So. 2d 465, 476-77 (¶25) (Miss. 2006)). Accordingly, the supreme court found that the admitted evidence of Stone's prior bad acts was proper. While *Stone* addresses prior bad acts rather than prior convictions, the discretionary standard remains the same in both scenarios.

¶21. Finally, in *Taylor v. State*, 362 So. 3d 1117 (Miss. Ct. App. 2019), the defendant was charged with aggravated assault after beating his wife when she informed him she would be filing for divorce. *Id*. at 1120 (¶3). At trial, the State called the defendant's "former paramour" who testified that she had also been "violently attacked" by him after breaking off their relationship and referred to the testimony in its closing argument. *Id.* at 1120 (¶¶5-7) (quoting *Lindsey*, 212 So. 3d at 45 (¶4)). The defendant was convicted and appealed based upon improper character evidence. *Id.* at (¶¶4-5). This Court affirmed the convictions, finding that the prior bad acts had been introduced "for noncharacter purposes to show motive, intent, and a common scheme or plan" and that the trial court "correctly applied Rule 403" by finding the prior bad acts testimony "very akin to" the defendant's case, thus outweighing any chance of prejudice. *Id.* at (¶¶9-11).

¶22. "[T]he fact that evidence was offered for noncharacter purposes but bore some reflection on the defendant's character d[oes] not bar its admissibility under Rule 404(b)." *Id.* at (¶10) (citing *Green v. State*, 89 So. 3d 543, 550-51 (¶17) (Miss. 2012); *Gore v. State*, 37 So. 3d 1178, 1187 (¶21) (Miss. 2010) (holding there was no abuse of discretion in the

admission of prior bad acts evidence under Rule 404(b) because "the evidence presented facts that were substantially similar to the case at hand")). Galarza's primary defense in his police interview was that he would never leave someone on his property if he killed them. The testimony regarding the prior manslaughter convictions was substantially similar enough to justify allowing them into evidence to prove a common "plan" of disposing of bodies. Because we give great deference to a trial court judge's decisions on the admissibility of evidence and see no real prejudice suffered on Galarza's part due to the overwhelming evidence of guilt, we find the admission of testimony about his prior convictions was not an abuse of discretion.

¶23. While it can certainly be highly prejudicial for a defendant's prior manslaughter conviction to be introduced at his trial for a totally unrelated murder charge, here, the unique nature of this case gives more credence to the trial judge's Rule 403 determination. Galarza shot and killed a man and hid the body on his own land. The same defendant had previously taken similar action in an effort to hide the killings of two manslaughter victims. That "plan" certainly had probative value. The trial judge weighed that probative value against the potential prejudice if admitted. It is not whether "this Court" would have admitted or excluded the evidence but, rather, whether the "trial court abused its discretion in doing so." *See Stone*, 94 So. 3d at 1085 (¶20). Here, the trial court relied on its "own discretion" as required by Rules 403 and 404(b). The trial court found the evidence of the prior manslaughter convictions probative and relevant under 404(b). Next, the trial court, as required, conducted a Rule 403 balancing test and determined the probative value of the

12

evidence was not substantially outweighed by the danger of unfair prejudice. Because of this Court's standard of review and the trial court's actions within the ambit of the Mississippi Rules of Evidence, we find no abuse of discretion in the admission of the evidence, especially in light of the clear wording of the limiting instruction given to the jury on this issue.

¶24. However, assuming for purposes of argument only, if the trial court did indeed err in allowing the testimony regarding Galarza's prior convictions, that error was harmless due to the overwhelming evidence of guilt offered at his trial. The harmless-error analysis requires us "to determine whether the weight of the evidence against the defendant is sufficient to outweigh the harm done by allowing admission of the evidence." *Case v. State*, 187 So. 3d 177, 183 (¶19) (Miss. Ct. App. 2015) (internal quotation mark omitted) (quoting *Veasley v. State*, 735 So. 2d 432, 437 (¶7) (Miss. 1999)). "A harmless-error determination requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed *against the strength of the evidence of defendant's guilt.*" *Walton v. State*, 998 So. 2d 971, 976 (¶14) (Miss. 2008) (emphasis added) (quoting *Hopkins v. State*, 799 So. 2d 874, 879 (¶10) (Miss. 2001)). Our determination "is made based on a de novo review of the record." *Id.* (citing *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991)).

¶25. Galarza's prior convictions were only a small piece of the State's overall evidence against him. Indeed, Galarza admitted to two different people, who both testified, that he killed Watts. Further, there was evidence that Watts's personal identification cards were found near the same route Galarza instructed Thompson to take where, in Thompson's

13

testimony, she noticed him making "motions towards the window." The physical evidence showed that the rug fibers taken from the vacuum in Galarza's home matched the rug wrapped around Watts's body. Further, the bullet fragments found in Watts's body were consistent with having been shot from Galarza's Winchester 30-30 found at Burns's home. There was overwhelming evidence for a reasonable jury to find Galarza guilty of the murder even if the prior manslaughter convictions had not been admitted.

## CONCLUSION

¶26.    This Court shows great deference to trial court judges in this context and therefore finds no abuse of discretion in the admission of evidence of Galarza's prior convictions. However, even if there were discretionary errors in the admission of the evidence, those errors were harmless due to the overwhelming weight of the evidence of guilt. Accordingly, we affirm.

¶27.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD AND SMITH, JJ., CONCUR. WILSON, P.J., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

14