RANDOLPH, Justice,
for the Court:
¶ 1. Ted W. Stone was convicted of the aggravated assault of Carolyn Stone and was sentenced to twenty years’ incarceration and a $4,000 fine. Having carefully considered the record and the briefs filed on behalf of Ted Stone and the State, we discern no error. Accordingly, we affirm Stone’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. Ted Stone (“Stone”), Kay Stone Hill, and Carolyn Stone are the children of Seretha Stone. A grand jury indicted Stone for the aggravated assault of Carolyn Stone on July 26, 2010. Stone’s jury trial began on October 5, 2010, in Itawam-ba County Circuit Court. Due to prior threats and assaults, Carolyn previously had obtained a restraining order requiring Stone to stay off her property. However, on June 7, 2010, Stone entered Carolyn’s house.
¶ 3. Carolyn, Kay, and Seretha testified to the following events: Stone pushed his way past Seretha and into the house. Once in the house, he sat in a chair in the living room. Carolyn then entered the room and stood behind a recliner. Seretha left the room to avoid interfering in the conversation between Carolyn and Stone. Without provocation, Stone began beating Carolyn with his walking cane. Upon hearing a noise in the living room, Seretha returned to see Stone beating Carolyn. Seretha grabbed the cane and tried to take it away from Stone. As she was pulling on the cane, the rubber tip came off. Kay attempted to thwart the attack by striking Stone with a cordless telephone. Stone pushed her into a chair. Kay ran outside and called the police. Seretha testified that, after the scuffle, Stone “turned around and left and we called 911[,]” but that the police were already on their way because of Kay’s call.[1] Carolyn testified that, when Stone stopped beating her, she ran from the living room into a bedroom and attempted to call the police, but was too dazed to operate the phone. Carolyn testified that Stone then walked into the bedroom and told her: “I will visit my mother in this house any time I want to. Do you understand?” and then left.
¶ 4. Stone offered a different account at trial. He testified that Seretha allowed him to enter the house. He sat in a chair in the living room, and was talking with Kay when Carolyn entered the room and began berating Seretha for allowing Stone to enter the house and arguing with Stone about the ownership of the house. Carolyn initiated the violence when she picked up the cordless phone and began striking Stone with it. He told her to stop, but she continued. He hit a footstool with his cane, at which point he conjectured thát the cane’s rubber tip must have fallen off. He then hit Carolyn “as hard as [he] could” in an attempt to get her away from him. He then agreed to leave, and, as he was limping out with his cane, Carolyn pushed him. As he was falling, he again hit her with the cane, this time causing her head to bleed. He testified that he awoke on the floor some time later and left the house immediately.
¶ 5. Carolyn also testified that, between 2002 and 2005, Stone had slapped her; hit her in the face with a flyswatter; held a baseball bat over her head while she was in bed while threatening to “beat [her] to a pulp” and kill her; and threatened to stalk, kill, and beat her with a hammer. In January 2005, Carolyn obtained a restraining order prohibiting Stone from entering *1081 her property. She testified that she and her mother actively avoided Stone — locking their doors and staying out of the front yard to avoid seeing Stone if he drove by — and, thus, hadn’t seen much of Stone for the five months before the assault. As a result, Carolyn was surprised and scared when she saw him in her living room on June 7.
¶ 6. At trial, the State sought to introduce into evidence Stone’s multiple threats and attacks of Carolyn to prove motive, intent, preparation, plan, knowledge, and absence of mistake or accident. The State asserted that evidence of these threats and prior assaults was necessary to reveal the complete story of the crime for which Stone was being tried. The trial court agreed, and, after determining that the evidence was more probative than prejudicial, allowed the State to introduce evidence of Stone’s prior bad acts. After the State had presented its case in chief, Stone’s counsel moved for a directed verdict, arguing only that the State had not proven that Stone had manifested indifference to human life. The trial judge denied the motion for a directed verdict. After receiving proper instruction from the court, the jury returned a guilty verdict of aggravated assault. Stone was sentenced to twenty years, with four years suspended, and a fine of $4,000. The court denied Stone’s motion for judgment notwithstanding the verdict.
ISSUES
¶ 7. Stone’s appellate counsel raised the following issues:
(1)Whether the trial court erred in denying Stone’s motion for a directed verdict, because the State did not present sufficient evidence for the jury to find Stone guilty of aggravated assault.
(2)Whether the trial court erred in admitting evidence of Stone’s prior bad acts.
¶ 8. Subsequently, Stone filed an inartful pro-se supplemental brief. Stone apologized “to the Court ... for [his] inclusion of facts which may be deemed inadmissible in consequence of their absence from the record.... ” The supplemental brief raised four issues:
(1) “Ineffectual Assistance of Counsel” for trial counsel’s failure to seek a change of venue, failure to challenge an ex-parte order excusing Assistant District Attorney Dennis Farris from testifying, failure to subpoena several witnesses that Stone had requested be called, and failure to subpoena Stone’s medical records.
(2) A claimed Miranda[2] violation related to Stone’s apology to Carolyn during his preliminary hearing, a recording of which was admitted at trial and played for the jury.
(3) “There was no use of a ‘deadly weapon’ nor intent to inflict ‘serious bodily injury.’ ”
(4) “Illegal and disparate sentence.”
ANALYSIS
I. Standards of Review
¶ 9. “This Court reviews the denial of a motion for a directed verdict de novo.” Parker v. State, 30 So.3d 1222, 1231 (Miss.2010) (citation omitted). This Court applies an abuse-of-discretion standard when reviewing a trial judge’s decision regarding the admission or exclusion of evidence. Hargett v. State, 62 So.3d 950, 952 (Miss.2011).
¶ 10. First, we direct our attention to the pro-se claims.
*1082 II. Stone’s ineffective-assistance claim contains numerous facts outside the record.
¶ 11. We decline to address Stone’s ineffective-assistance claim, because it contains numerous allegations outside the record. This Court has long held that it cannot consider that which is not in the record. See, e.g., State v. Cummings, 203 Miss. 583, 591, 35 So.2d 636, 639 (Miss.1948) (“[b]eing an appellate court, we take the record as it comes to us, and receive no new evidence here.”) (citations omitted); Pratt v. Sessums, 989 So.2d 308, 309-10 (Miss.2008) (“[w]e cannot consider evidence that is not in the record.”) (citation omitted). As Stone’s ineffective-assistance claim contains numerous allegations outside the record, we find that such claims are more properly the subject of a petition for post-conviction relief.
III. Stone’s claim of a Miranda violation is procedurally barred, because he never asserted it at trial.
¶ 12. Stone never asserted a Miranda violation at trial. “[Tjhis Court has ... consistently held that errors raised for the first time on appeal will not be considered .... ” Stockstill v. State, 854 So.2d 1017, 1023 (Miss.2003) (citations omitted). As Stone raised his claim of a Miranda violation for the first time on appeal, it is procedurally barred. Alternatively, the claim is without merit, as Stone’s apology to Carolyn was not the product of custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (providing that “the prosecution may not use statements ... stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.”) (emphasis added).
IV. Stone’s sentence of twenty years’ imprisonment with four years suspended and a $4,000 fine was not illegal.
¶ 13. Imposing a sentence of twenty years’ imprisonment with four years suspended and a $4,000 fine was within the trial court’s statutory authority for the crime of which Stone was convicted. Mississippi Code Section 97-3-7(2) provides that a defendant convicted of aggravated assault “upon a person who is sixty-five (65) years of age or older or a person who is a vulnerable adult,” may be punished by a fine of up to $5,000 and up to thirty years’ imprisonment. Miss.Code Ann. § 97-3-7(2) (Rev.2006). As the record reveals that Carolyn was seventy-three years old at the time of the aggravated assault, Stone’s sentence was within the statutory limits for the aggravated assault of a person who is sixty-five years of age or older. Accordingly, this argument is without merit.
V. The pro-se argument that there was no use of a deadly weapon or intent to inflict serious bodily injury is repetitive of an issue raised by appellate counsel.
¶ 14. The pro-se argument that there was no use of a deadly weapon or intent to inflict serious bodily injury is essentially the same as the argument of Stone’s counsel that the trial court erroneously denied a directed verdict for the State’s failure to prove all elements of aggravated assault. Therefore, our analysis of this pro-se argument is merged with our analysis of appellate counsel’s argument in the following section. See infra ¶¶ 15-17.
*1083 VX. The trial court did not err in denying Stone’s motion for a directed verdict, because sufficient evidence presented at trial supports the verdict.
¶ 15. We find that the trial court did not err in denying Stone’s motion for a directed verdict, because the evidence was more than sufficient for the jury to find Stone guilty of aggravated assault. Stone argues on appeal that the State failed to prove the essential elements required for an aggravated-assault conviction. He asserts that the walking cane with which he beat Carolyn is not a deadly weapon, her injuries were not serious enough for an aggravated-assault conviction, and the State offered no evidence of circumstances manifesting extreme indifference to human life.[3]
¶ 16. Stone’s claims are without merit. Stone relies on Brooks v. State, 360 So.2d 704 (Miss.1978), for his arguments that a walking cane is not a deadly weapon and that Carolyn’s injuries were not sufficiently severe to support his aggravated-assault conviction. In Brooks, the defendant struck a woman with a school book and a notebook in close proximity (in a car), and her “injuries consisted of a few bruises and marks on the left side of her neck.” Id. at 705. The Brooks Court found that, because the victim’s injuries were not serious, it could not conclude that the books were deadly weapons, but could “only surmise as to what would have resulted had the attack continued and ... the mere probability of the guilt of a particular crime cannot support a verdict of guilty.” Id. at 707. Brooks is immediately distinguishable from the case before us, because the physical forces generated by swinging a metal walking cane are inherently greater than those generated by a typical school book or notebook. Further, unlike the Brooks victim’s bruises and marks, the serious head wounds inflicted upon Carolyn were documented and exhibited to the jury. Photos of Carolyn, taken by paramedics after the assault, depict a missing clump of hair, multiple scalp lacerations, and Carolyn’s shirt soaked with blood from her head wounds. A doctor testified that Carolyn’s head wounds were caused by “dangerous force” serious enough that he was concerned about “internal injuries[,]” and that “[s]he was very lucky she just sustained a laceration to her head.” Unlike Brooks, this case did not require anyone to surmise as to the probability of guilt for the crime charged, for Carolyn’s injuries were quite severe. An analysis of the facts in Brooks offers no guidance for our decision today.
¶ 17. A case more closely analogous is Simmons v. State, in which the court found that a pen used to stab a victim in the neck was a deadly weapon. Simmons v. State, 568 So.2d 1192, 1202 (Miss.1990). Like Stone, “Simmons claim[ed] that there was ‘nothing in the record to show an assault in a manner to produce serious bodily injury or by means likely to produce death.’ ” Id. To the contrary, we found that a pen could be deadly and quoted witness testimony that the victim in Simmons — like Carolyn Stone-“had been badly beaten up. She was bleeding. Her hair was cut off and matted with blood. She was scratched and bleeding.” Id. We recognize that, like a pen, a walking cane used for its designed purpose is not considered a deadly weapon. The Simmons Court found that an object that is not ordinarily considered a deadly weapon can become a deadly weapon when used to inflict injuries like the ones we see today. Just as Simmons used a pen as a *1084 deadly weapon to inflict serious head wounds, Stone used a metal walking cane to beat Carolyn, inflicting lacerations, bruises, and whelps on her head and back. “Whether an item which is not inherently dangerous may become a deadly weapon based upon its use is a question of fact to be determined by the jury.” Rushing v. State, 753 So.2d 1136, 1146 (Miss.Ct.App.2000) cert. denied (Apr. 27, 2000). We find that there was sufficient evidence for the jury to determine that Stone’s metal walking cane was used as a deadly weapon, thus fulfilling the elements required for a conviction of aggravated assault. Finding that the State presented sufficient evidence to show aggravated assault using a deadly weapon, we need not address whether circumstances manifesting extreme indifference to human life were proven. We conclude that the trial court did not err in denying Stone’s motion for a directed verdict on the aggravated-assault charge.
VII. The trial court did not err in admitting evidence of Stone’s prior threats and assaults of Carolyn.
¶ 18. We find that the trial judge did not abuse his discretion in admitting evidence of Stone’s history of threats and violence directed toward his sister “for motive, for opportunity, for his intent, his preparation, his plan and what he was going to do, and knowledge, he’s the one that did it for the purpose of his identity and certainly absence of mistake or accident on his part.” All relevant evidence is generally admissible, absent an exception. Miss. R. Evid. 402. Evidence is relevant when it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Miss. R. Evid. 401. This definition is extremely broad, so that evidence is relevant and should be admitted “if the evidence has any probative value at all.” Adcock v. Miss. Transp. Comm’n, 981 So.2d 942, 947 (Miss.2008) (emphasis added). However, “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury-” Miss. R. Evid. 403 (emphasis added). Evidence of prior bad acts is inadmissible to prove a defendant’s character, though it is admissible for other purposes, as follows:
[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Miss. R. Evid. 404(b). To determine whether evidence of prior bad acts is admissible under these rules, we use a two-pronged analysis: “[t]he evidence offered must (1) be relevant to prove a material issue other than the defendant’s character; and (2) the probative value of the evidence must outweigh the prejudicial effect ... [as] required by Mississippi Rule of Evidence 403....” Welde v. State, 3 So.3d 113, 117 (Miss.2009) (citations omitted). Therefore, the evidence was admissible at trial if it was relevant to a noncharacter issue and its probative value outweighed its prejudicial effect.
¶ 19. We find that the trial court did not abuse its discretion in finding that the evidence of Stone’s prior threats and assaults of Carolyn was relevant to prove noncharacter issues, including an element of aggravated assault with a deadly weapon.[4] To convict a defendant of aggravated *1085 assault, the following elements must be proven:
(1) the defendant attempted to cause or purposely or knowingly caused
(2) bodily injury to another
(3) with a deadly weapon or other means likely to produce death or serious bodily harm.
Miss.Code Ann. § 97-3-7(2) (Rev.2000) (emphasis added). Evidence of other threats and assaults of Carolyn before the assault at issue was probative in determining that Stone purposely or knowingly acted on this occasion. The evidence was also probative for other noncharacter purposes, including Stone’s intent, motive,[5] and common plan or scheme.[6] Because the evidence was probative of these noncharacter issues, it met the relevance threshold.[7]
¶ 20. We likewise find that the trial court did not abuse its considerable discretion in finding that the probative value of the evidence outweighed its prejudicial ef-feet. The question on review is not whether this Court would have admitted the evidence, but whether the trial court abused its discretion in doing so, for “the exclusion of prejudicial evidence is permissive; that is, if a trial court determines that the prejudicial effect of evidence substantially outweighs its probative value, it is not obligated to exclude the evidence, but may do so at its discretion.” Ross v. State, 954 So.2d 968, 993 (Miss.2007) (emphasis added). Accordingly, “the weighing and balancing task required by rule 403 ... asks only that a [trial] judge rely on his/her own sound judgment.”[8] Jones v. State, 920 So.2d 465, 476-77 (Miss.2006) (citations omitted). After hearing argument from both sides, the trial judge applied the Rule 403 balancing test and found as follows:
it appears to me they’re offering it for all of them, for motive, for opportunity, for his intent, his preparation, his plan and what he was going to do, and knowl *1086 edge, he’s the one that did it for the purpose of this identity, and certainly absence of mistake or accident on his part. I think it goes to show all of them. And it’s not being offered to show character.
Looking at Rule 403 and 404 and performing a balancing test the Court finds that since it is the same victim that the State is alleging in this case that was assaulted that the bad acts all resulted against the same victim before, the Court finds that it is more probative than prejudicial and the Court is going to allow the prior bad acts in.
Thus, the trial judge conducted the Rule 408 balancing test and relied on his own sound judgment to reach the conclusion that the evidence was admissible. As trial courts are not required to exclude evidence upon applying the test and finding that the prejudicial impact of the evidence outweighs its probative value, we cannot conclude that the judge abused his extensive discretion in admitting evidence of Stone’s prior bad acts.
¶ 21. Moreover, even if the trial court had erroneously admitted the evidence, its error would not warrant reversal. “Unless this judicial discretion is so abused as to be prejudicial to the accused, we will not reverse [the trial judge’s] ruling.” Irby v. State, 49 So.3d 94, 100 (Miss.2010) (citations omitted). An error does not require reversal “when it is apparent on the face of the record that a fair minded jury could have arrived at no other verdict than that of guilty.” Forrest v. State, 335 So.2d 900, 903 (Miss.1976). The evidence against Stone at trial was overwhelming. Stone admitted at a bail hearing — the tape of which was played at trial — and at trial that he had attacked Carolyn and had struck her with his cane as hard as he could. Both Kay Hill and Seretha Stone witnessed Stone attack Carolyn, and all three women identified Stone as the perpetrator of the crime. The doctor who examined Carolyn shortly after the assault testified that her injuries were consistent with being struck by a metal walking cane, that they were caused by “dangerous force[,]” and that “[s]he was very lucky she just sustained a laceration to her head” with no internal injuries. Pictures of Carolyn’s injuries were admitted into evidence, showing a missing clump of hair, blood dripping down her face, and her shirt soaked with blood. A 911 call, in which Kay told the operator that she, her sister, and her mother had been attacked, was played for the jury. Faced with this copious evidence of Stone’s aggravated assault of Carolyn, a fair-minded jury could have arrived at no other verdict than that of guilty. Thus, even if we were to find that the trial judge abused his discretion— which he did not — in admitting the prior-bad-acts evidence, we could not find that his error prejudiced Stone to require reversal.
CONCLUSION
¶ 22. Finding no error by the trial court, we decline to reverse Stone’s conviction. Accordingly, we affirm Stone’s conviction and sentence in the Itawamba County Circuit Court.
¶ 23. CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOUR (4) YEARS SUSPENDED, WITH CONDITIONS, AND A FINE OF $4,000.00, AFFIRMED. APPELLANT SHALL BE GIVEN CREDIT FOR TIME SERVED.
WALLER, C.J, CARLSON, P.J., LAMAR AND PIERCE, JJ„ CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE *1087 WRITTEN OPINION JOINED IN PART BY LAMAR AND CHANDLER, JJ. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.; DICKINSON, P.J., JOINS IN PART.

. A 911 call, in which Kay told the operator that she, her sister, and her mother had been attacked, was played for the jury.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. At trial, Stone argued only that the State had not proven circumstances manifesting extreme indifference to human life.

. That the multiple instances of aggression toward Carolyn occurred some years prior to *1085 the assault does not affect their relevance. We have provided that, "where the competency of evidence is doubtful because of remoteness!)] the better practice is to admit the evidence!)] leaving it to the jury to determine its credibility and weight.” Gore v. State, 37 So.3d 1178, 1186 (Miss.2010) (citations omitted). Thus, the remoteness of the prior acts goes to the credibility and weight of the evidence, not to its relevance, and the jury was the proper authority to determine the proper weight to give such evidence.

. "Motive” has been defined as "some inner drive, impulse, intention, etc. that causes a person to do something or act in a certain way....” See Powers v. Vista Chem. Co., 109 F.3d 1089, 1094 (5th Cir.1997) (quoting Webster’s New World Dictionary 866 (3d College ed.1994)). Evidence of prior threats and assaults of Carolyn was probative of whether Stone was driven by an inner impulse to assault her on this occasion.

. Evidence of prior threats and assaults of the same victim, Carolyn, could support an inference of a common plan, scheme, or system that Stone used repeatedly to control, abuse, and assault Carolyn. See People v. Sabin, 463 Mich. 43, 614 N.W.2d 888, 901 (2000) ("[o]ne could infer from the[] common features [of the assaults and abuses perpetrated by defendant] that defendant had a system that involved taking advantage of the parent-child [sibling] relationship, particularly his control over his daughters [sister], to perpetrate abuse.”).

. We note that, while Justice Chandler does not address Rule 401, he seems to agree that the evidence was relevant under that rule, but faults the trial court for its Rule 404(b) and Rule 403 analysis.

. While Justice Chandler maintains that the trial court was required to identify the exception that applies and "find that the evidence is probative of each 404(b) exception it finds applicable[,]” our caselaw reveals that failure to identify and separately evaluate evidence for each 404(b) other purpose does not require reversal. See Gore v. State, 37 So.3d 1178, 1186 (Miss.2010) ("[u]nder one or more of the exceptions listed in Rule 404(b), the circuit court did not abuse its discretion in admitting evidence_”) (emphasis added).