# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00664-COA

JAMES L. JOHNSON, JR. A/K/A JAMES JOHNSON A/K/A JAMES JOHNSON, JR.                 APPELLANT

v.

STATE OF MISSISSIPPI                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/2014 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN R. WHITE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | J. TRENT KELLY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED DOMESTIC VIOLENCE AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS SUSPENDED, TEN YEARS TO SERVE, AND FIVE YEARS OF POSTRELEASE SUPERVISION |
| DISPOSITION: | REVERSED AND REMANDED - 12/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.

## CARLTON, J., FOR THE COURT:

¶1. An Alcorn County jury found James Johnson guilty of committing aggravated domestic violence by strangulation against his ex-wife, Volante Jones, on December 3, 2012. *See* Miss. Code Ann. § 97-3-7(4) (Supp. 2012). In appealing his conviction to this Court, Johnson raises the following issues: (1) whether the circuit court erred by admitting evidence

of Johnson's prior bad acts; (2) whether the circuit court erred by not allowing Johnson to make a sufficient proffer of the testimony he sought to elicit from Jones; and (3) whether the State's description of Johnson during closing arguments amounted to prosecutorial misconduct.

¶2.     Prior to Johnson's trial, the State proffered evidence of four of Johnson's past bad acts. Then, during its case-in-chief, the State introduced police reports related to Johnson's prior bad acts and convictions for domestic violence. As reflected in the trial testimony and the admitted offense reports, the State offered evidence of Johnson's four prior bad acts involving four different women and spanning a thirteen-year time period. The first incident, which occurred in 1999, involved Johnson's first wife, Pamela Johnson, and resulted in a simple-assault conviction. The second incident, which occurred in 2000, involved yet another victim, Johnson's ex-girlfriend, Jennifer Farley, and also resulted in a simple-assault conviction. The third incident, which occurred in 2002, involved Jones, the victim in the instant case. Although this third incident was never prosecuted, Jones testified at trial as to the facts surrounding the incident. The fourth incident, which occurred in 2012, involved Johnson and Jones's daughter. This fourth incident also failed to result in a conviction and was instead dismissed after Johnson completed an anger-management course.

¶3.     The offense reports related to Johnson's prior bad acts contained various allegations that Johnson engaged in other criminal conduct than just the four past bad acts the State proffered during the pretrial hearing. The circuit court admitted into evidence Johnson's two prior convictions and the four police reports related to his prior offenses. In addition, the

circuit court admitted testimony from Jones as to Johnson's third prior bad act.

¶4.     The circuit court admitted the four offense reports without determining whether, under Rule 404(b) of the Mississippi Rules of Evidence, the State offered the additional offenses in the police reports for proper purposes. *See Welde v. State*, 3 So. 3d 113, 117 (¶15) (Miss. 2009). Furthermore, the circuit court admitted the offense reports without scrutinizing whether, under Rule 403 of the Mississippi Rules of Evidence, the probative value of the additional allegations contained in the reports outweighed the prejudice to Johnson. *See Welde*, 3 So. 3d at 117 (¶15). We therefore reverse the circuit court's judgment and remand this matter for further proceedings consistent with this opinion.

## FACTS

¶5.     Johnson and Jones met when they began taking taekwondo lessons from the same instructor. At the time of the incident in question, Johnson possessed a first-degree black belt in taekwondo, and Jones possessed a second-degree black belt in taekwondo. The couple married in 2005 and had three children together during the course of their relationship. Jones and Johnson divorced in November 2012, but they both continued to live in Corinth, Mississippi, in Alcorn County.

¶6.     A few weeks after the couple's divorce, Johnson called Jones on December 3, 2012, as Jones was preparing to move from her current home into a new home. Jones testified that Johnson inquired about her activities the previous weekend. Jones responded by telling Johnson that, if the conversation was not about the couple's children, then she and Johnson had nothing to discuss. Jones further testified that she then ended the phone call.

3

¶7. About thirty minutes later, while Jones was cleaning out the refrigerator at her old home, she heard Johnson ring the doorbell and let himself into the house. Although Johnson possessed no key to the house, Jones testified that she had left the door unlocked since her children would soon arrive home from school. According to Jones's testimony, she was at home alone when Johnson entered, and she had not invited Johnson to her home. Jones further stated that she tried to ignore Johnson when he joined her in the kitchen so as not to provoke him. However, Jones testified that, as she placed items from the freezer into bags at her feet, Johnson grabbed the top of her hair. Jones immediately raised up in response, and when she did, Johnson grabbed her throat with his other hand.

¶8. Jones testified that she and Johnson wrestled as she attempted to break his hold on her throat so she could breathe. Jones denied, however, that she initiated a fight with Johnson or made any aggressive movements toward him. Jones testified that Johnson eventually flipped her on her back, used his weight to pin her down, and then placed his right arm around her throat. Although she never lost consciousness, Jones stated that she felt as though she were drowning because she could neither breathe nor speak. Jones testified that Johnson began to hit her in the head and ask questions about her whereabouts and with whom she had spent her time. Jones also testified that Johnson would loosen his grip for a second to allow her to speak but would then tighten his grip again after she answered. Jones stated that the fight finally ended because she and Johnson grew weary from the constant struggling. Shortly after the altercation ended, the couple's son arrived home from school. Johnson then left the house, and once all three children arrived safely home, Jones called the police and

4

reported the incident.

¶9.    After the responding officer spoke to Jones and observed that her injuries appeared consistent with those caused by strangulation, Detective Heather Glass of the Corinth Police Department was called to further investigate the matter.  Detective Glass noted that Jones's eyes were swollen and that her face and neck bore red marks and scratches.  Detective Glass also observed petechiae, or ruptured blood vessels, in Jones's eyes.  Based on her training, Detective Glass believed Jones's petechiae were likely caused by the restriction of blood flow Jones experienced during her altercation with Johnson.  While investigating the December 3, 2012 incident between Jones and Johnson, Detective Glass learned that, over the past thirteen years, Johnson had been involved in four prior violent acts against Jones and three other women in which Johnson was charged as the initial aggressor.

¶10.    Significant to our review on appeal, during pretrial motions, the defense moved ore tenus to exclude any references by the State to Johnson's purported prior bad acts or prior misdemeanor convictions for domestic violence against Jones and the other women.  In response to the defense's pretrial motion, the State informed the circuit court that it intended to offer evidence of four of Johnson's prior bad acts.

¶11.    During the pretrial proffer, the State provided that Johnson's four prior altercations involved four different victims. The State informed the circuit court of the following facts regarding the four prior altercations:  the first altercation in 1999 involved Johnson's first wife, Pamela, and resulted in a simple-assault conviction; the second altercation in 2000 involved Johnson's ex-girlfriend, Farley, and resulted in a simple-assault conviction; the third

5

altercation in 2002 involved Jones, the victim in the present case, and resulted in no prosecution; and the fourth altercation in 2012 involved Johnson and Jones's daughter and was retired to the files.

¶12.    The defense argued that, under Rule 404(b), evidence of other crimes and prior bad acts must be limited in scope and offered for proper evidentiary purposes such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.  The defense further asserted that the present case involved no such issue.  After hearing the State's proffer and the defense's response, the circuit court heard another pretrial motion before ruling on the defense's ore tenus motion in limine to suppress the evidence of Johnson's prior bad acts or convictions.  Upon disposing of the other pretrial matter, the circuit court heard closing argument from the parties as to the admissibility of the State's proffered evidence of Johnson's four prior offenses and alleged bad acts.

¶13.    In its closing argument to the defense's ore tenus motion to suppress, the State explained that it sought "to introduce into evidence at the appropriate time four prior offenses or bad acts that were committed by . . . Johnson[.]"  The State asserted the following details as to the four prior bad acts:

> The first one had an offense date of [May 15, 1999], in which he was charged with aggravated assault against a[n] ex-wife, or now ex-wife, a Pamela Dilworth, or Pamela Johnson Dilworth. . . . And he pled guilty[,] and the State has a certified copy of the guilty—of the record entered by the court. . . . He was originally charged with aggravated assault[,] and it was reduced to a simple assault.
>
> The second act is a simple assault, verbal threats, against a girlfriend who had had a child with Mr. Johnson.  The offense date was on November 11, 2000].  He pled guilty to simple assault, a misdemeanor, on [December 5,

6

2000]. The [c]ourt also has a certified—also has a certified abstract of that guilty conviction.

. . . .

The third offense, or the third act that the State would seek to introduce had an offense date of [July 10, 2002]. . . . [A] complaint was filed against Mr. Johnson by the victim in this case today, Volante Jones. . . . [H]e was charged with domestic violence. She had a swollen right eye, forehead, signs of injuries. That charge was never prosecuted, Your Honor.

The fourth event is against his daughter[,] who was [fourteen] years old at the time. . . . And the offense date on that was on [July 27, 2012]. We have a disposition in that, Your Honor, in which that charge was dismissed . . . because he attended an anger[-]management program. And when he completed that[,] they dismissed that charge . . . .

¶14. The State informed the circuit court that it sought to introduce the evidence of Johnson's prior bad acts and convictions to demonstrate Johnson's intent, motive, and plan when he went to Jones's home on December 3, 2012. Because Johnson raised the issue of self-defense in voir dire and submitted a self-defense jury instruction, the State further argued that the evidence of Johnson's prior bad acts and convictions was relevant and admissible to refute Johnson's self-defense claim.

¶15. In the State's concluding remarks on the defense's motion in limine, the State mentioned the following additional details related to its prior proffer of Johnson's alleged prior bad acts:

In the first one[,] he went to the woman's house with a gun, 911 was called. He went to her in the house and threatened to kill her.

The second one was a simple assault. He went to his girlfriend's place of employment . . . . He went there, confronted her, had a discussion, threatened her saying[,] ["I]f you don't stop legal proceedings in regard[] to my child custody["]—the child[-]custody issue they had, ["]I'm going

7

to["]—he threatened her. He pled guilty[,] and we have *a[n] abstract, a certified abstract for that*.

The third offense is he went again to Volante Jones[,] and that occurred in 2002, had a discussion, a fight broke out. He was charged with simple assault. That was not pursued.

And then the fourth event is he struck his daughter upon the head, the nose, the face.

It shows that he has a tendency to strike women, Your Honor. So we would show that it shows intent, motive, plan. He always approaches the victim, he goes there, he causes the confrontation[,] and therefore, it would not be in self-defense . . . .

(Emphasis added). Despite the State's mention of these additional details, the record reflects that the State never amended its prior proffer to the circuit court. In addition, the State still failed to inform the circuit court of all the additional criminal allegations contained in the related offense reports. The State also failed to mention to the circuit court its intent to introduce any law-enforcement offense reports, much less the entire contents of such reports.

¶16. In response to the State's closing argument, the defense asserted in its closing argument that three of the prior bad acts were too remote to be considered relevant or probative since they occurred over ten years ago. The defense further contended that the prejudice resulting from the evidence outweighed any probative value. After the parties' closing arguments, the circuit court asked whether Johnson's attorney possessed any caselaw to support the defense's argument on remoteness. In addition, the circuit court judge stated that, if Johnson's attorney were able to find caselaw prohibiting or limiting the use of prior bad acts past a certain point in time, he would possibly reconsider the issue.

¶17. Absent such a showing by Johnson's attorney, the circuit court judge stated:

8

But in light of the arguments here today, the [c]ourt finds that . . . the State is seeking to prove intent, motive, plan, and that it was not in self-defense. The self-defense issue was voir dired and presented to the jury. There was also a jury instruction prior to trial filed along those lines by the defense, and to show a history of violence against women. For those reasons[,] the [c]ourt finds that under Rule 404 . . . the State does bring forward a proper argument to do that. . . . [L]ook[ing] at the balancing effect under [Rule] 401 [of the Mississippi Rules of Evidence], I find that . . . those four [prior bad acts] are all relevant. They are all against women. They are all where [Johnson] was [the] aggressor and . . . went there and initiated contact, as alleged in this same case. That does show intent, motive, lack of mistake, plan[,] and a history against women and therefore is relevant evidence.

¶18. As reflected in the record, the circuit court conducted a Rule 403 balancing test of the four prior altercations proffered by the State at the pretrial hearing. In so doing, the circuit court determined that the State's proffered evidence of Johnson's four prior bad acts and offenses was admissible under Rules 403 and 404(b) to show Johnson's intent, motive, and plan and to refute Johnson's self-defense claim. The record reflects, however, that the evidence later admitted at trial in the four offense reports exceeded the State's proffer that the circuit court considered and weighed during the pretrial hearing.

¶19. The four offense reports admitted during Johnson's trial contained accusations that Johnson had committed various other serious crimes not included in the State's pretrial proffer. After the State offered the four offense reports at trial for admission into evidence, the circuit court conducted no evaluation of whether the State offered the contents of the offense reports, alleging serious additional offenses, for a proper and relevant purpose under Rule 404(b). The circuit court also failed to determine whether, as required by Rule 403, the prejudice arising from the additional allegations in the reports outweighed the probative value. Instead, without redacting any of the additional serious criminal allegations contained

in the offense reports, the circuit court admitted the entire contents of the four reports into evidence over the defense's previously raised and continuing objection.[1]

¶20.    We now turn to a review of the evidence that the State admitted during Johnson's trial.[2] As previously discussed, the State's pretrial proffer only provided that Johnson's first past bad act in 1999 involved an aggravated-assault charge that later resulted in a simple-assault conviction.  At trial, however, the offense report admitted into evidence regarding Johnson's 1999 simple-assault conviction contained additional information.

¶21.    The 1999 offense report asserted that police received a 911 call from Johnson's first wife, Pamela, and that the responding officers found Johnson and Pamela arguing.  The contents of the 1999 offense report further alleged that Pamela told the officers she and Johnson were getting a divorce and that Johnson had not lived in the house for almost five months.  The record further shows that the contents of the 1999 offense report contained Pamela's allegations that Johnson had come over, kicked in the back door, held a gun to her head, and threatened to kill her and burn down the house.  The offense report also stated that, when officers searched Johnson, they discovered a pistol concealed in Johnson's pocket. Detective Glass testified that Johnson was initially charged with aggravated assault but that the charge was later reduced to simple assault.  As the record reflects, in addition to

---

[1] *Cf. Pruitt v. State*, 807 So. 2d 1236, 1239 (¶5) (Miss. 2002) (acknowledging that documents in the case were edited to eliminate references to past crimes, bad acts, and other irrelevant information).

[2] The record reflects that the State offered into evidence three of the offense reports during Detective Glass's testimony.  Later, through Jones's testimony, the State offered into evidence a fourth offense report.

admitting the 1999 offense report, the circuit court also admitted the related simple-assault conviction into evidence.

¶22.    With regard to Johnson's second past bad act or conviction, the State's pretrial proffer asserted that it sought to introduce verbal threats and a misdemeanor conviction for simple assault. However, through Detective Glass's trial testimony, the State offered, and the circuit court admitted, an offense report filed in 2000 that contained claims by Johnson's ex-girlfriend, Farley, that Johnson came to her workplace and threatened to "do something to her if she did not stop the legal action[] against him for child support." The record reflects that the contents of this second offense report also contained Farley's assertions that Johnson had previously acted aggressively toward her. The offense report stated that Farley wanted to file charges because she was afraid of Johnson and wanted to keep him from harming her or her baby. As a result of this altercation with Farley, Johnson was charged with and convicted of simple assault. As stated, the entire contents of the second offense report, as well as the related misdemeanor conviction, were admitted into evidence over the defense's continuing objection. The evidence admitted through this 2000 offense report once again exceeded the State's pretrial proffer of a misdemeanor conviction for simple assault and verbal threats.

¶23.    The State's third pretrial proffer related to a past bad act of domestic violence between Johnson and Jones, the victim in the present case. The past bad act allegedly occurred in 2002 and was never prosecuted. As previously discussed, the State introduced evidence of this alleged past bad act through Jones's testimony. The record reflects that the State again

11

offered the entire contents of the 2002 offense report for admission into evidence. The record shows that the 2002 offense report alleged that officers who responded to the domestic-violence call found Jones had sustained visible signs of abuse, including a swollen right eye, a bump on her forehead, and a bloody right knee. The record further reflects that Jones claimed Johnson inflicted the injuries. Jones testified at trial that she chose not to press charges against Johnson. Even though no conviction resulted from this alleged incident, the circuit court again allowed into evidence the entire contents of this 2002 offense report.

¶24. The fourth past bad act or conviction the State proffered during the pretrial hearing was an alleged assault against Johnson and Jones's daughter. The record reflects Jones's testimony asserting that she agreed to dismiss the charge after Johnson completed an anger-management course. The record further reflects that the charge was, in fact, dismissed. At trial, the State offered, and the circuit court admitted into evidence, the entire offense report. The record shows that the offense report alleged that Jones returned home to find her daughter with a swollen nose and a knot above her eye where Johnson hit her.

¶25. The evidence admitted during Johnson's trial also showed that, after Jones reported the incident charged and prosecuted in the present case, Captain Ralph Dance of the Corinth Police Department arrested Johnson. During the State's case-in-chief, Captain Dance testified that he had known Johnson for years because the two had previously been neighbors. Captain Dance further testified that he had taken taekwondo lessons at the same martial-arts studio as Johnson and Jones.

¶26. According to Captain Dance's testimony, Johnson voluntarily stated that he went to

Jones's home on December 3, 2012, to discuss his concerns regarding the couple's children. Johnson told Captain Dance that Jones let him into the house. Johnson explained to Captain Dance that, during the couple's conversation, Johnson mentioned he had contacted the Department of Human Services (DHS) to report his concerns. Johnson further told Captain Dance that Jones became violent at the mention of DHS and began to punch and kick him. Johnson then told Captain Dance that he grabbed Jones around the throat and threw her to the floor to prevent her from injuring him. According to Captain Dance's testimony, Johnson failed to mention any injuries or to show any visible signs of injury resulting from his altercation with Jones.

¶27. After the State rested, Johnson testified on his own behalf during the defense's case-in-chief. Johnson stated that he called Jones on December 3, 2012, to discuss her behavior over the previous weekend and to explain that he felt Jones's conduct was not in their children's best interest. According to Johnson, he informed Jones that he was stopping by her house to talk to her about her behavior and their children's welfare. Johnson corroborated Jones's testimony that he rang the doorbell, entered the house, and then joined Jones in the kitchen.

¶28. According to Johnson, Jones initiated their altercation, and he merely acted in self-defense. Johnson admitted that Jones never actually punched or kicked him. However, he testified that Jones grew upset and came toward him after he said he planned to contact DHS. Johnson further testified that he and Jones began to struggle and that he put his arm around Jones and pulled her to the floor to prevent Jones from injuring him. Johnson stated that he

13

used a chokehold to subdue Jones so that he would not have to defend himself by more forceful means.

¶29.   After considering the evidence and testimony, the jury found Johnson guilty of aggravated domestic assault.  The circuit court sentenced Johnson to twenty years in the custody of the Mississippi Department of Corrections, with ten years suspended, ten years to serve, and five years of postrelease supervision.  Johnson then filed an unsuccessful motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Aggrieved by his conviction and sentence, Johnson now appeals to this Court.  Upon review, we find that reversible error resulted when the circuit court admitted into evidence the four offense reports of Johnson's prior bad acts without first scrutinizing the additional allegations contained within the reports for undue prejudice under Rule 403. *See Welde*, 3 So. 3d at 117 (¶15).

## DISCUSSION

¶30.   Johnson argues the circuit court erred by admitting into evidence the four police reports containing details of Johnson's prior bad acts of domestic violence.  Finding this assignment of error dispositive, we limit our review to this issue.  We find that the circuit court indeed erred by admitting into evidence the entire contents of the four police reports that discussed various additional criminal offenses.  The circuit court admitted the entire contents of the four offense reports without first determining whether the State offered the evidence for a permissible purpose under Rule 404(b) and without applying the balancing test required by Rule 403 to determine if the probative value outweighed the prejudice to

14

Johnson.[3]

¶31. This Court reviews the circuit court's decision to admit or exclude evidence for abuse of discretion. *Stone v. State*, 94 So. 3d 1078, 1081 (¶9) (Miss. 2012). Where an error occurs regarding the admission or exclusion of evidence, we will only reverse if the error adversely affects a party's substantial right. *Ladnier v. State*, 878 So. 2d 926, 933 (¶27) (Miss. 2004). Before admitting evidence of a defendant's prior bad acts, the circuit court must find that the evidence is relevant to prove a material issue other than the defendant's character and that, under Rule 403, the evidence's probative value outweighs its prejudicial effect. *Welde*, 3 So. 3d at 117 (¶15).

¶32. Evidence of prior bad acts is inadmissible to prove a defendant's character to show that he acted in conformity therewith. M.R.E. 404(b). *See also Ballenger v. State*, 667 So. 2d 1242, 1256-57 (Miss. 1995) (discussing the admissibility of prior-bad-acts evidence). "The reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged." *Mitchell v. State*, 110 So. 3d 732, 734 (¶10) (Miss. 2013) (citation omitted). We acknowledge that evidence of prior bad acts may be admissible, though, if its probative value outweighs its prejudicial effect and if offered "for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). *See also Welde*, 3 So. 3d at 117 (¶15) (discussing the two-part test used to determine

---

[3] *See Hargett v. State*, 62 So. 3d 950, 953 (¶8) (Miss. 2011) ("Although a judge has broad discretion in admitting evidence, evidence of a crime other than the one for which the accused is being tried generally will not be admissible."); *Lesley v. State*, 606 So. 2d 1084, 1089-90 (Miss. 1992) (discussing the admission of prior-bad-acts evidence).

whether evidence is admissible under Rules 403 and 404(b)).

¶33.    In determining whether the evidence of Johnson's prior bad acts was admissible for noncharacter purposes under Rule 404(b), we apply the previously referenced two-part test. *See Stone*, 94 So. 3d at 1084 (¶18); *Welde*, 3 So. 3d at 117 (¶15).  "The evidence offered must (1) be relevant to prove a material issue other than the defendant's character; and (2) the probative value of the evidence must outweigh the prejudicial effect." *Welde*, 3 So. 3d at 117 (¶15) (citation omitted).

¶34.    We now turn to an application of Mississippi caselaw to the facts and evidence in this record.  At the pretrial hearing on the defense's motion in limine to suppress the evidence of Johnson's alleged past bad acts or convictions, the State proffered to the circuit court its intent to offer four past acts or convictions of domestic violence.  As set forth in the recitation of the facts, the record of the pretrial hearing reflects that the State provided a verbal proffer to the circuit court of Johnson's four prior bad acts or convictions.  However, the State did not provide the circuit court with the four related offense reports.  Nor did the State mention in the proffer its intent to offer the entire offense reports into evidence, including the additional criminal allegations contained within the reports.

¶35.    As acknowledged, during the pretrial hearing, the circuit court found the State's proffered evidence of Johnson's four alleged past bad acts or convictions permissible to rebut Johnson's claim of self-defense, to show Johnson's history of violence against women, and to prove intent, motive, and plan pursuant to Rule 404(b).  The circuit court found those purposes relevant and probative under Rules 401 and 402.  The circuit court then balanced

16

the State's proffer under Rule 403 and found the evidence's probative value outweighed any prejudice. In addition, the circuit court provided a limiting instruction to the jury as to the consideration of the past bad acts and convictions.[4]

¶36.    In its closing argument on the defense's motion in limine to suppress the evidence, the State mentioned some of the additional facts and allegations contained in the offense reports. However, the State failed to amend its previous proffer of the four past bad acts or convictions to include any of these additional details, and the additional facts that the State included in its closing argument during the pretrial hearing failed to explain all of the additional criminal allegations contained in the four offense reports. As the record reflects, the contents of the offense reports admitted at trial included allegations of the following additional bad acts: kicking in a back door during an incident with Johnson's first wife, Pamela; holding a gun to Pamela's head; threatening to kill Pamela; threatening to burn down Pamela's home; and allegations from Johnson's former girlfriend, Farley, that she feared Johnson would harm her baby. During Johnson's trial, the circuit court admitted into evidence the entire contents of the four offense reports without conducting a Rule 403 balancing test for undue prejudice and without determining whether a proper purpose existed under Rule 404(b) for admitting the entire contents of the reports. *See Welde*, 3 So. 3d at 117 (¶15).

---

[4] The circuit court also informed Johnson's attorney that no need existed for the defense to renew its objections to the admission of past bad acts at trial and that the defense's objections had been properly preserved. *See Kettle v. State*, 641 So. 2d 746, 748-49 (Miss. 1994) (finding the defendant's pretrial motion in limine was specific enough to preserve the issue for appeal).

¶37. As previously discussed, our precedent establishes that error occurs where prior bad acts are admitted into evidence for noncharacter purposes without first evaluating whether, under Rule 403, the evidence's probative value outweighs its prejudicial effect. *Id.* The relevant two-part analysis requires a determination of whether the evidence was relevant to prove a material issue other than Johnson's character and whether the evidence was more probative than prejudicial. *See Stone*, 94 So. 3d at 1084 (¶18); *Welde*, 3 So. 3d at 117 (¶15). Since the circuit court admitted the entire contents of the offense reports without determining whether the additional details contained within met the criteria set forth in the Mississippi Rules of Evidence, the circuit court abused its discretion by admitting the evidence. *See Welde*, 3 So. 3d at 118 (¶20).

¶38. In addition to passing muster under Rule 404(b), evidence of other crimes and past bad acts must also satisfy Rule 403's requirement that the probative value outweighs the harmful consequences that might flow from the evidence's admission. *See Lesley*, 606 So. 2d at 1089-90.[5] During Johnson's trial, the circuit court abused its discretion by admitting into evidence the entire contents of the four offense reports over the defense's continuing objection. As a result, we must reverse the circuit court's judgment and Johnson's conviction and remand the case to the circuit court for retrial. In so doing, we decline to address the

---

[5] *See also Mack v. State*, 650 So. 2d 1289, 1311-14 (Miss. 1994) (discussing the admissibility of other-crimes evidence); *West v. State*, 463 So. 2d 1048, 1051-52 (Miss. 1985) (discussing the trial court's admission of other-crimes evidence). *Cf. Flowers v. State*, 773 So. 2d 309, 323-24 (¶¶46-47) (Miss. 2000) (finding that evidence of other murders was not necessary to present the complete story of the crimes charged and that, while some evidence of the other murders could have been admitted for the purposes of Rule 404(b), the evidence admitted exceeded the purposes of Rule 404(b) and could only have been intended to inflame the jury).

remaining assignments of error.

¶39.  **THE JUDGMENT OF THE ALCORN COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO ALCORN COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES AND WILSON, JJ., CONCUR.  MAXWELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**